Max SIMMONS, Plaintiff,

v.

MILL'S PRIDE, INC., Defendant.

No. 91-5037-CV-SW-8.

United States District Court,
W.D. Missouri,
Southwestern Division.

March 19, 1992.

Charles D. Curless, Lamar, Mo., for plaintiff.

Jennifer H. McCoy, Thomas A. Ryan, Lathrop & Norquist, Kansas City, Mo., C. Craig Woods, Columbus, Ohio, for defendant.

## ORDER

STEVENS, District Judge.

Plaintiff has filed a multi-count complaint against defendant, alleging primarily breach of an employment contract and employment discrimination on the basis of plaintiff's national origin, in violation of Title VII of the Civil Rights Act of 1964. Defendant asks the court to abstain from deciding the case in lieu of a pending parallel suit in Ohio state court. The case is now before the court on defendant's motion to dismiss or to stay. Because of the fact-specific nature of abstention analysis, the court will give a fairly detailed recitation of the facts in this case.

### I. Factual Summary

Plaintiff, Max Simmons, is now and at all relevant times was a citizen of the state of Missouri. Defendant, Mills Pride, Inc. is a Connecticut corporation with its principal place of business in Waverly, Ohio. Mills Pride is a manufacturer of hardwood products including kitchen cabinets and vanities.

Simmons was hired as a sales representative for Mills Pride and commenced his employment in December, 1989. The employment agreement entered by Simmons and Mills Pride called for Simmons to be compensated on a salary and commission basis, and permitted Simmons to draw against his commissions of up to $24,000 per annum. Simmons' sales territory for Mills Pride covered approximately the western half of the United States.

Mills Pride terminated Simmons' employment on January 15, 1991. Mills Pride claims that the termination was based on insufficient sales volume generated by Simmons. Simmons alleges among other things that the termination was due to his national origin as a United States citizen.

On January 29, 1991, Mills Pride filed a lawsuit against Simmons in the Court of Common Pleas for Pike County, Ohio. Mills Pride claimed breach of contract for Simmons' failure to refund excess draws that he had taken, and it sought a declaratory judgment that it owed no further commissions to Simmons. On March 13, 1991, Simmons moved to dismiss the case for lack of personal jurisdiction, and the motion was denied on April 8, 1991.

On March 29, 1991, some two months after Mills Pride had brought suit in Ohio, Simmons brought this action against Mills Pride in the Circuit Court of Barton County, Missouri. The summons was issued on April 25, 1991, and service was completed on April 29, 1991, approximately three months after the initiation of Mills Pride's action. Simmons' original petition contained five counts, primarily claiming breach of contract and seeking the payment of commissions allegedly owed by Mills Pride. Mills Pride removed the suit to this court on the basis of diversity jurisdiction. On April 15, 1991, Simmons also filed an employment discrimination claim with the Equal Employment Opportunity Commission.

On May 31, 1991, Simmons filed an Answer and Counterclaim to Mills Pride's action in Ohio state court. The counterclaim states seven causes of action against Mills Pride which, in sum, generally follow the claims raised by Simmons in his Missouri state court petition.

On July 16, 1991, the E.E.O.C. issued a determination letter and a right to sue notice to Simmons, in which it declined to bring suit against Mills Pride. On October 15, 1991, Simmons amended his complaint, now in federal court, alleging unlawful employment practices in violation of Title VII and emotional distress as a result of those employment practices.

## II. The Abstention Doctrine

When parallel actions are proceeding in both state and federal court, the general rule is that "the pendency of [the] action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland*, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762 (1910). The United States Supreme Court ruled in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), however, that federal court abstention on the basis of parallel state proceedings may be appropriate in certain circumstances. The Court has also stated that "such deference may be equally appropriate even when matters of substantive federal law are involved in the case." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 664, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504 (1978) (citing *Colorado River*, 424 U.S. at 820, 96 S.Ct. at 1247-48).

■ The issue of whether to defer to a state court's concurrent jurisdiction is committed to the discretion of the district court. *Id.* The Court made clear in *Colorado River*, however, that abstention should not be considered lightly by the district court:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."

*Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244 (quoting *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188-89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).

The Supreme Court has articulated a number of factors that a district court should consider in determining whether ab-

stention is appropriate in a given case: the order in which jurisdiction was obtained by the respective forums; whether either forum has assumed jurisdiction over res or property which is in contention; the relative convenience of the respective forums; the desirability of avoiding piecemeal litigation; whether state or federal law provides the rule of decision on the merits; the ability of the forums to protect the rights of the parties; and whether the later filed suit is vexatious or reactive to the earlier filed suit. *See Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246–47; *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 17 n. 20, 23–26, 103 S.Ct. 927, 937 n. 20, 941–42, 74 L.Ed.2d 765 (1983).

In applying these factors, the court is directed to "not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937. As the following analysis will show, even with the balance initially weighted in favor of exercising jurisdiction, the facts of this case clearly tilt the balance in favor of abstention.

*III. Analysis of the Abstention Factors*

■ As an initial matter, the court finds that the claims raised by Simmons in his Missouri petition are virtually identical to the claims raised in his counterclaim to the Ohio complaint. In fact, the only real difference between the two is that Simmons has amended his complaint, now in federal court, to allege violations of Title VII. The Title VII charge will be discussed more specifically herein.

Mills Pride filed its action in Ohio state court on January 15, 1991, approximately two months before Simmons filed in Missouri state court, and approximately three months before Mills Pride was served with a copy of Simmons' petition. In addition, Simmons moved to dismiss the Ohio case for lack of personal jurisdiction before bringing his own suit. Thus, Mills Pride's suit was clearly brought well in advance of Simmons' filing the parallel suit.

Moreover, irrespective of the filing dates of both suits, it is important to focus on the extent to which both suits have progressed. *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 939–40. While the court has no knowledge, either of its own or through the parties' pleadings, of the development of the Ohio action, it notes that this action has hardly progressed at all, other than plaintiff amending his complaint and defendant seeking the dismissal or stay that is now at issue. This first factor, therefore, certainly weighs in favor of abstention, both on the grounds that the Ohio case was filed first and because the instant action has not left the starting gate.

The relative convenience of the respective forums also weighs in favor of abstention. The residences of both parties to this suit are of equal weight and cancel each other. Simmons resides in Missouri; Mills Pride's principal place of business is Waverly, Ohio. Other considerations, however, point to Ohio as the more convenient forum: virtually all of the witnesses to the events in this case are located in Ohio; Simmons' employment records are maintained in Ohio; and most of Simmons' work was performed either in Ohio or other states outside of Missouri. The court believes therefore that Ohio presents the more convenient forum.

The next factor to consider is whether the case is governed by state or federal substantive law. The answer is that the case is governed actually by a mix of both. The primary focus of both parties' claims is a breach of contract dispute. Simmons claims that Mills Pride has breached his employment agreement in not paying commissions that he believes he is owed. Mills Pride claims in the Ohio action, and most likely would claim as a counterclaim in the current action, that Simmons has breached the employment contract by not refunding his excess draws. Thus, these claims are governed by state common law on contracts.

In addition, while neither party has moved specifically for a choice of laws rul-

ing, and while the court thus need not definitively decide the issue at this time, it notes that there is at least a strong argument that Ohio law should govern the case. The employment agreement at issue was apparently negotiated in Ohio; the events giving rise to the parties' claims took place in Ohio; most of Simmons' work was performed in Ohio or states other than Missouri; and while it certainly is not controlling of any conflict of laws issue in the present case, the parties signed an agreement specifying that Ohio law would govern any workers' compensation claims between the parties.

Simmons recently amended his complaint, however, to also include a claim under Title VII of the Civil Rights Act of 1964. Clearly that claim presents a federal statutory question and would be governed by federal substantive law. This does not mean, however, that the claim must be heard by a federal court. In *Yellow Freight Systems, Inc. v. Donnelly,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990), the Supreme Court held that state courts have concurrent jurisdiction to hear Title VII claims, stating that "[u]nder our 'system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.' " *Id.* 110 S.Ct. at 1568 (quoting *Tafflin v. Levitt,* 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990)).

Consequently, the amendment of Simmons' complaint to allege a Title VII claim does not render as moot the question of whether abstention to a parallel state proceeding is appropriate. In sum, the court believes that the factor of state versus federal substantive law does not weigh in favor of either forum. The case is governed by a mix of state and federal law, and both forums are equally competent to adjudicate the parties' claims.

Likewise, while Simmons makes conclusory allegations about "the distinct bias which is present in Pike County, Ohio," this court has no reason to believe that the Court of Common Pleas for Pike County is unable to protect Simmons' rights. Accordingly, the court believes that the forums' respective abilities to protect the parties' rights also does not weigh in favor of either forum.

The court must also consider whether Simmons' suit was brought vexatiously or in reaction to Mills Pride's suit. The current record offers no indication that this case was filed vexatiously. Simmons clearly brought the suit after Mills Pride had commenced its action, however, and therefore it arguably was brought in reaction to the earlier suit. It is just as possible, however, that the Ohio action, seeking a declaratory judgment that commissions are not owed, was filed as a preemptive measure to a suit that Mills Pride had reason to know Simmons would file in an attempt to collect those commissions. In that scenario, it would appear that Mills Pride's action, while filed first, was actually the reactive suit. The court is unwilling to draw either conclusion from the facts at hand, and thus this factor does not weigh in favor of either forum.

The final factor for consideration, the desirability of avoiding piecemeal litigation, weighs heavily in favor of abstention. With the exception of Simmons' Title VII claim, the claims that have been raised in both cases are virtually identical. The facts that are at issue in both cases are identical. Failure to abstain and defer to the state court's concurrent jurisdiction would result in the same issues being litigated almost simultaneously in two separate courts and would be a tremendous waste of the judiciary's limited resources. *See Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (abstention involves "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' "). In addition, the possibility of both court's reaching inconsistent judgments counsels this court to abstain from exercising its jurisdiction.

In total, therefore, the court finds that the weight of the relevant factors in this case clearly comes down in favor of abstention. While some of the factors do not tip

the scale one way or the other, the inconvenience of the federal forum, the order in which the suits were brought, the respective development of both suits, and the desire to avoid piecemeal litigation and inconsistent judgments all indicate that abstention of this court's jurisdiction is appropriate.

■ In *Moses H. Cone,* the Supreme Court declined to decide "whether a dismissal or a stay should ordinarily be the preferred course of action" when a district court decides to abstain from exercising its jurisdiction, other than to say "that a stay is as much a refusal to exercise federal jurisdiction as a dismissal." 460 U.S. at 28, 103 S.Ct. at 943. Because a dismissal would enable Simmons to appeal this court's decision to abstain, if he elects to do so, and a stay would not, the court believes that dismissal is preferable. *See Will,* 437 U.S. at 664, 665, 98 S.Ct. at 2558. In addition, dismissal without prejudice would not prevent Simmons from returning to federal court should the state forum prove to be inadequate in some respect. *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. at 943. Accordingly, it is

ORDERED that defendant Mills Pride's motion to dismiss or stay is granted and the case is hereby dismissed without prejudice.